M. D. TAYLOR ET AL. v. H. CLAY TAYLOR ET AL.

(Filed 14 November, 1917.)

1. **Wills—Devises—"Children"—Estates for Life—Rules of Construction— Intent.**

A devise of land to "children" does not include "grandchildren," and the principle ordinarily applicable to the construction of a devise to survivors after a life estate, that it is determined as of the death of the life tenant, and not the death of the testator, is but a rule of interpretation to ascertain the intent of the testator, and will not be permitted to defeat it when the intent otherwise appears by proper construction.

2. **Same—Existing Conditions—Early Vesting of Estates—Words Employed —Interpretation.**

The condiion of the testator and his family, and all the attendant circumstances, may be considered when relevant in the interpretation of his will to ascertain his intent, the law favoring an early vesting of estates; and when words are used with a certain significance in one part of the will they will be construed in other parts thereof to have the same significance, unless a contrary intent appears.

3. **Same—"My Living Children."**

A testator who died leaving a wife and twelve children surviving devised certain of his lands to his wife for life, and "at the expiration of my wife's interest in land and property, divide it equally among my living children"; and by another item, "the balance of my estate to be divided equally among my living children." He was predeceased by a son, who had married contrary to his wishes, of which marriage there are living children: *Held*, the intent of the testator, by the use of the words, "my living children," was to designate his own children who should survive him.

APPEAL by petitioners from *Long, J.*, at June Term, 1917, of GUIL-FORD.

This is a proceeding to sell land for division.

John B. Taylor was the owner of said land, and he died, leaving a holographic will, which has been duly admitted to probate, and is as follows:

"I, John B. Taylor, of the county of Guilford and State of North Carolina, being at this time of sound and disposing mind and memory, but always mindful of the uncertainty of life, and being disposed of making a just and equitable disposition of my property, I have made this my last will and testament, in manner and form following:

"Item 1. I give and devise to my beloved wife, Mary J. Taylor, the tract of land on which I now live, for and during her widowhood, including two tracts bought of J. W. McMerry, together with all cattle and hogs, sheep, farming tools, household and kitchen furniture.

"Item 2. I give to my wife, Mary, the grain on the farm, with the horses and mules and wagons and harness, to have for her benefit.

"Item 3. I will that the balance of my estate be equally divided amongst my living children.

"Item 4. And at the expiration of my wife's interest on land and property, divide it equally among my living children.

"I hereby appoint my wife, Mary J. Taylor, my executrix to execute this my last will and testament.

"Whereof I have hereunto set my hand and seal, this the 17th day of July, 1885. JOHN B. TAYLOR."

The said John B. Taylor had thirteen children, one of whom died before said will was made, leaving children, and two of the surviving twelve died after the death of the said John B. Taylor and prior to the death of his wife, Mary J. Taylor, leaving children, and ten of them survived the said Mary J. Taylor.

The child who died prior to the making of the will married against the will of his father.

The ten surviving children are the petitioners, and the children of the two who died after the death of the testator are the defendants, they claiming as the heirs at law of the deceased children.

The said John B. Taylor left property other than that devised to his wife for life.

The petitioners contend that the words, "my living children," in the will mean children living at the death of the said Mary J. Taylor, and the defendants contend that these words mean children living at the death of the testator.

His Honor held with the defendants, and rendered judgment accordingly, and the plaintiffs excepted and appealed.

*Clifford Frazier for plaintiffs.*
*Charles A. Hines and C. R. Wharton for defendants.*

ALLEN, J. It is true, as contended by the petitioners, that a devise to children does not include grandchildren (*Lee v. Baird,* 132 N. C., 755),

and that when the devise is to survivors after a life estate, the time usually adopted for determining who comes within the class is the death of the life tenant, and not the death of the testator (*Bradshaw v. Stansberry,* 164 N. C., 356), but these are not principles of substantive law, but rules of interpretation, which should be resorted to to ascertain the intention of the testator, and not to defeat it. *Crossley v. Leslie,* 14 Anno Cases, 706.

It is also competent, in construing a will, "to consider the condition of the testator and his family and all the attendant circumstances" (*Ripley v. Armstrong,* 159 N. C., 158), and the law favors a construction which gives to the devisee a vested interest as early as possible, and not a contingent interest, "to the end that property may be kept in the channels of commerce." *Dunn v. Hines,* 164 N. C., 120.

The law, also, if possible, adopts the just, natural, and reasonable rule of an equal distribution among children (40 Cyc., 1411), and if words are used in one part of the will in a certain sense, the same meaning is to be given to them when repeated in other parts of the will, unless a contrary intent appears. "It is a well-settled rule of testamentary construction that if it is apparent that in one use of a word or phrase a particular significance is attached thereto by the testator, the same meaning will be presumed to be intended in all other instances of the use by him of the same word or phrase." *Raskrow v. Jewell,* Ann. Cases, 1914b, 64; *Gibson v. Gibson,* 49 N. C., 425; *Lockhart v. Lockhart,* 56 N. C., 205.

Applying these principles, we are of opinion that the term, "living children," includes all the children living at the death of the testator.

The testator had thirteen children, one of whom predeceased him, leaving children, and twelve of whom survived him.

There was some reason for excluding the one child and his descendants from participation in the estate, because he had married against the wishes of the testator, but the other twelve stood upon equal terms, and the testator declares his purpose to make "a just and equitable disposition" of his property. But he did intend, if all died before the death of the life tenant, that he should be intestate as to his whole estate, except as to the devise for life or widowhood, or, if all died except one, leaving children, that the sole survivor should take the whole estate.

To so hold would not only be inequitable in opposition to the declared purpose to make an equitable disposition of his property, but it would also run counter to the presumption against intestacy, and still this is a necessary conclusion if the position of the petitioner can be maintained.

The testator has, however, put the matter at rest by giving to "living children" a definite meaning, and has, as some of the authorities express it, become a dictionary for himself. He devised *a part* of his property to his wife for life, and the balance to his living children.

Suppose there had been no life estate, and the devise had been of the whole estate to my "living children," clearly the children living at the death of the testator would take, and if so, the part of the estate not devised to the wife for life would pass to the same person.

We have, then, in item 3 a devise of that part of the estate not given to his wife for life to his twelve children who survived him as "my living children," and the same meaning must be given to the same language in item 4, as no contrary intent appears, because the testator has said what he means by "my living children."

The reference to the expiration of the wife's interest in the last item is simply intended to fix the time for the division of the land devised to her for life.

Affirmed.